UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                              :
UNITED STATES OF AMERICA,                     :    Case No. 5:17-CR-105
                                              :
        Plaintiff,                            :
                                              :
    v.                                        :    OPINION & ORDER
                                              :    [Resolving Doc. 13]
CURTIS EARL TUCKER, JR.,                      :
                                              :
        Defendant.                            :
                                              :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this case, the United States charges Defendant Curtis E. Tucker, Jr., with possession with intent to distribute methamphetamine and being a felon in possession of a firearm.[1] On April 24, 2017, Defendant Tucker filed a motion to suppress evidence.[2] The Court held a suppression hearing on May 4, 2017. For the reasons stated below, the Court **GRANTS** Defendant's motion to suppress.

## I. Background

Defendant Tucker argues that in March 2017, police executed two search warrants that were not supported by probable cause and were so lacking in probable cause that a reasonable officer could not rely upon the warrants. Specifically, Tucker argues that the affidavits submitted to support the search warrants gave no evidence showing any nexus between the searched residences and any drug activity.[3] Thus, Defendant Tucker claims that all evidence seized from the searches is inadmissible.

---
[1] Doc. 9.
[2] Doc. 13. Defendant also filed two supplemental motions. Docs. 15, 26. The Government responded. Docs. 20, 27. Defendant replied. Doc. 28.
[3] Doc. 13 at 7.

Case No. 5:17-CR-105
Gwin, J.

*Saxon Avenue Affidavit*

Respectively, one affidavit supported each search warrant. The United States and Defendant agree that this Court should examine those affidavits and that other evidence is unimportant to the motion to suppress.

On March 8, 2017, Akron Police Detective M.V. Gilbride applied for and obtained a search warrant for a house owned by Defendant Tucker at 791 Saxon Avenue, Akron, Ohio.[4] The supporting affidavit ("Saxon Affidavit") was based on surveillance of suspected drug dealer Camiolo Rocha-Ayon, Jr. and upon limited surveillance of Defendant Tucker.

The Saxon Affidavit said that the "affidavit is submitted for the limited purpose of securing a records and document search warrant for the above-described premises."[5]

In support of the application to search the Saxon house, the Saxon Affidavit gave almost no discussion of suspicious activities at the Saxon house. Instead, the Saxon Affidavit described highly suspicious activity by drug dealer Rocha-Ayon away from the Saxon house. The affidavit then described one occasion when Rocha-Ayon came to the Saxon house for limited time. Apart from Rocha-Ayon's one trip to the Saxon house, the affidavit said nothing about the Saxon location and little about Defendant.

The Saxon Affidavit begins with a statement that from July 2016 to February 2017, electronic surveillance showed that Rocha-Ayon's white lnfiniti drove to the Akron area seven times.[6] The affidavit gave no specific information regarding any of the trips. The Affidavit did not describe any end locations for the Akron trips. The Affidavit does not say Rocha-Ayon came to the Saxon Avenue location during those trips.

---

[4] Doc. 13-1.
[5] *Id.* at 7.
[6] *Id.* at 8.

Case No. 5:17-CR-105
Gwin, J.

Without any specific support, the Saxon Affidavit alleges that Rocha-Ayon typically drove a Chrysler but used the white Infiniti for drug deals.[7] The Saxon Affidavit then gives Detective Gilbride's opinion that drug traffickers often avoid using their typical car when involved with drug trafficking deals.[8]

The Saxon Affidavit then describes a January 15, 2017, event. On that day, Rocha-Ayon met with an unidentified male at a truck stop near US-42 and I-270.[9] Surveillance footage showed the man removed a bag from the trunk of Rocha-Ayon's vehicle and walked away.[10] Affiant Gilbride testified that he believed the January 15, 2017, incident was a drug sale.[11] No arrests were made after the January 15 truck stop incident and the affidavit gave no follow-up with regard to the January 15 incident.

The Saxon Affidavit then does not give any additional information until more than a month later. More than a month after the January truck stop incident, on February 17, 2017, Rocha-Ayon exchanged his Chrysler for the Infiniti.[12] He made the exchange at his Canal Winchester home near Columbus. The affidavit then describes Rocha-Ayon driving the Infiniti to Cabela's Outdoor Store at the northern edge of Columbus and describes him as buying a vacuum sealer and sealing bags.[13]

---

[7] The Saxon Affidavit thus alleges:

> On at least three occasions, Rocha-Ayon was observed to be alone when returning from Akron, Ohio. Furthermore, agents verified on several occasions that Rocha-Ayon travelled to Akron, Ohio, in a vehicle that he does not normally use for his day-to-day travel, and in which no other occupant has been documented.

*Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

3

Case No. 5:17-CR-105
Gwin, J.

From the Cabela's store, the Affidavit says Rocha-Ayon then traveled north to 791 Saxon Avenue, Akron, Ohio.[14] DEA investigators followed. With the Cabela's store opening at 9:00 AM, Rocha-Ayon presumably arrived at Defendant Tucker's 791 Saxon Avenue, Akron house sometime near 11:30 AM.[15]

The affidavit then described that a white Chevrolet van registered to Defendant Tucker arrived to the Saxon house at 11:38 AM; the van departed shortly thereafter, and the van then returned to the house at 12:07 PM.[16] The Saxon Affidavit says Rocha-Ayon left the Saxon house at 12:59 PM, drove to an outlet mall, and then returned to Canal Winchester in the Columbus area, where Rocha-Ayon switched out the Infiniti for the Chrysler.[17]

The Saxon Affidavit does not describe any specific conduct during the time the white Infiniti and the Chevrolet van were present at the Saxon Avenue location. The Affidavit does not say that Defendant Tucker was the driver of the Chevrolet van or that either Rocha-Ayon or the van driver went into the 791 Saxon Avenue house.[18]

The Saxon Affidavit then describes Rocha-Ayon's arrest two days later. On February 19, 2017, Rocha-Ayon drove the Infiniti to a Grove City, Ohio Walmart parking lot, where officers saw him place a tan duffel bag in his trunk before leaving.[19] After Highway Patrol officers

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.* at 8-9.
[18] The Saxon Affidavit gives this description:

> During the time ROCHA-AYON JR. was at the residence at approximately 11:38 a m. surveillance units observed a white Chevrolet van, bearing Ohio Registration GSD5071 registered to CURTIS TUCKER arrive at 791 Saxon Avenue. The white van depa11ed shortly after and returned to 791 Saxon Avenue at approximately 12:07 p m. At approximately 12:59 p.m. Affiant observed the white van back out of the driveway and let ROCHA-AYON JR.'s white Infinity out of the driveway. The white van then pulled back into the driveway. . . . The white Infiniti left from 791 Saxon Ave. and traveled back to 5126 Algean Drive Canal Winchester, Ohio 43110, after having made a stop at the outlet malls on 1-71.

> *Id.*

[19] *Id.* at 9.

4

Case No. 5:17-CR-105
Gwin, J.

stopped Rocha-Ayon for a moving violation, they searched his vehicle and seized approximately eleven kilograms of cocaine from the tan duffel bag, as well as a receipt for a vacuum sealer and bulk plastic bags.[20] Grove City is roughly 135 miles from the Saxon Avenue, Akron location.

The Saxon Affidavit then says that officers executed a search warrant at Rocha-Ayon's two Canal Winchester homes near Columbus.[21] Officers discovered a vacuum sealer, scales, wire transfer receipts, empty kilo-wrappers, eight firearms, and approximately $223,000 in cash.[22]

Detective Gilbride prepared the Saxon Affidavit in support of a search warrant for 791 Saxon Avenue. As discussed above, the affidavit describes Rocha-Ayon's suspicious activity, Rocha-Ayon's brief contact with the Saxon Avenue property and a van owned by Defendant Tucker, and Rocha-Ayon's arrest. The affidavit also mentioned that Akron Police received an anonymous tip in October 2016 of suspected drug dealing at 791 Saxon Avenue.[23] The affidavit also referenced Defendant Tucker's 2000 conviction for possession of crack-cocaine with intent to distribute.[24]

On March 8, 2017, Akron Municipal Judge Jon Oldham signed the search warrant. The next day, officers searched the Saxon house and recovered a loaded 9mm handgun, a hydraulic press, money, documents, and drug packaging materials.[25] Officers also found Defendant Tucker's birth certificate, vehicle registrations, and a Summit County Fiscal Office record identifying Tucker as the owner of a property located at 2123 Penguin Avenue in Barberton, Ohio.[26]

---

[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 10.
[24] *Id.* The affidavit also referenced a 2012 drug possession conviction. *Id.* Defendant Tucker and the government stipulate that this 2012 conviction does not exist. Doc. 15. Accordingly, the Court excises this information from the affidavit and does not consider it in the Court's analysis. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).
[25] Doc. 13-1 at 5-6.
[26] Doc. 13-2 at 15.

Case No. 5:17-CR-105
Gwin, J.

*Penguin Avenue Affidavit*

Barberton City Detective Antenucci then applied for an additional search warrant at 2123 Penguin Avenue, Akron, Ohio.[27] The supporting affidavit ("Penguin Affidavit") included the information set forth in the Saxon Affidavit and described the items seized during the Saxon search.[28]

Additionally, the Penguin Affidavit identified evidence linking Defendant Tucker to the Penguin address. This evidence included (1) a Saxon house utility bill that was forwarded to the Penguin house, and (2) a call to the Summit County Sheriff about a domestic dispute at the Penguin address in which Defendant Tucker participated.[29]

Barberton Municipal Judge Jill Lanzinger signed the Penguin Avenue warrant on March 9, 2017, and officers executed it the same day.[30] Officers recovered large amounts of cash, methamphetamine, handguns, and various documents.[31]

*Procedural History*

On April 24, 2017, Defendant Tucker filed a motion to suppress all evidence seized at the Saxon and Penguin houses.[32] Tucker argues that all evidence seized from the properties is inadmissible because the underlying affidavits, and therefore the search warrants, lack probable cause.[33] Specifically, Defendant Tucker argues that each affidavit failed to establish a nexus between the searched residences and drug activity[34]

---

[27] *Id.*
[28] *Id.* at 13-15.
[29] *Id.* at 15.
[30] *Id.* at 5, 16.
[31] *Id.* at 5.
[32] Doc. 13. Defendant also filed two supplemental motions. Docs. 15, 16.
[33] Doc. 13 at 4-5.
[34] *Id.* at 7.

Case No. 5:17-CR-105
Gwin, J.

The Government responds that sufficient evidence connects the drug activity to Tucker's residences.[35] The Government points to Rocha-Ayon's presence at the Saxon house two days before Rocha-Ayon was arrested with a substantial quantity of illegal drugs. The Government also says Tucker had a previous drug conviction.[36] In addition, the government argues that even if the affidavits fail to establish probable cause, the officers still acted in good faith by executing search warrants approved by neutral state court judges.[37]

The Court held a suppression hearing on May 4, 2017.

## II. Legal Standard

The Fourth Amendment guarantees that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[38] Probable cause is a fair probability that evidence of a crime will be found.

An affidavit used to establish probable cause must provide the issuing magistrate a substantial basis for determining the existence of probable cause.[39] The circumstances detailed in the affidavit should demonstrate a "nexus between the place to be searched and the evidence sought."[40]

"When making a probable cause determination, a court is limited to the four corners of the affidavit."[41] Accordingly, an affidavit is "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."[42]

---

[35] Doc. 14 at 4.
[36] *Id.* at 6-7.
[37] *Id.* at 9.
[38] U.S. Const. Amend. IV.
[39] *United States v. Thomas,* 605 F.3d 300, 307 (6th Cir.2010).
[40] *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004); *see also United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).
[41] *United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013).
[42] *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000).

7

Case No. 5:17-CR-105
Gwin, J.

Generally, courts exclude evidence obtained in violation of the Fourth Amendment.[43] However, if law enforcement officers acted in good faith and reasonably relied on the warrant, the evidence obtained is still admissible.[44]

In *Leon v. United States*, the Supreme Court identified four scenarios where an officer's reliance on the warrant is <u>not</u> objectively reasonable: (1) when the affidavit contains false information that the affiant either knew or should have known was false; (2) when the issuing magistrate abandons neutrality and serves as a rubber stamp for police activities; (3) when the affidavit is bare-bones and severely lacks in indicia of probable cause; and (4) when the warrant is so "facially deficient" that it cannot be presumed to be valid.[45]

Here, Defendant Tucker argues that the affidavits severely lacked in indicia of probable cause to believe the Saxon Avenue or Penguin Avenue locations had evidence of drug activity. Because the affidavits say almost nothing regarding Tucker, the Saxon Avenue location, or the Penguin Avenue location, Defendant Tucker argues that the affidavit gives no "fair probability that contraband or evidence of a crime will be found" at the Saxon Avenue or Penguin Avenue locations.[46]

---

[43] *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *United States v. Alexander*, 540 F.3d 494, 501 (6th Cir. 2008).
[44] *United States v. Leon*, 468 U.S. 897, 905 (1984); *see Davis v. United States*, 564 U.S. 229, 239 (2011) (citing *United States v. Leon*, 468 U.S. 897 (1984)); *see also United States v. Carpenter*, 360 F.3d 591, 596-97 (6th Cir. 2004) (applying good faith exception where sufficient nexus existed between residence and illegal activity for police to reasonably believe a warrant valid).
[45] *Leon*, 468 U.S. at 923.
[46] *Illinois v. Gates,* 462 U.S. 213, 238-239 (1983)

8

Case No. 5:17-CR-105
Gwin, J.

### III. Discussion

**A. The Saxon and Penguin Affidavits failed to establish probable cause.**

Defendant Tucker argues that the Saxon and Penguin Affidavits lacked evidence linking his residences to drug trafficking.[47] Without this nexus, Tucker argues that both search warrants lack probable cause.[48] The Court agrees.

*1. Saxon Affidavit*

A common-sense reading of the Saxon Affidavit shows that no nexus existed between the residence and any drug activity. Detective Gilbride's statement that Rocha-Ayon "traveled to 791 Saxon Avenue on February 16, 2017 to collect drug proceeds from TUCKER to pay for the upcoming delivery of cocaine"[49] is unsubstantiated. "An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and . . . [a] wholly conclusory statement . . . fail[s] to meet this requirement."[50] "Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefore from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough."[51]

To summarize, the Saxon Affidavit says law enforcement suspected Columbus-area resident Rocha-Ayon of drug dealing. On January 15, 2017, Rocha-Ayon engaged in a suspected, but never confirmed, drug transaction at a truck stop near Columbus while using his white Infiniti.[52] The Saxon Affidavit also says Rocha-Ayon had earlier come to Akron seven times over seven months,[53] but the Affidavit gives no testimony that he engaged in drug

---

[47] Doc. 13 at 7.
[48] *Id.* at 8.
[49] Doc. 13-1 at 9.
[50] *Gates*, 462 U.S. at 239.
[51] *Nathanson v. United States*, 290 U.S. 41, 47 (1933).
[52] Doc. 13-1 at 8.
[53] *Id.*

9

transactions in those seven trips and gives no testimony that Rocha-Ayon had contact with Tucker or the Saxon location in those trips. The Saxon Affidavit is then limited to saying that Rocha-Ayon traveled to Saxon Avenue on February 17, 2017; that a van associated with Defendant Tucker came into the driveway after Rocha-Ayon arrived; that the van associated with Defendant Tucker left the Saxon Avenue house and then returned a short time later; and that Rocha-Ayon's white Infiniti then left the driveway and returned to the Columbus area.[54]

The Saxon Affidavit does not say that Rocha-Ayon or Tucker ever went into the Saxon Avenue location on February 17, 2017.

The government argues that the affidavit is sufficient to support the search of Tucker's Saxon house. The Government argues support from Tucker's 2000 drug possession conviction.[55] Obviously, a seventeen-year-old conviction gives almost no support to search a house, especially when the supporting affidavit says almost nothing about criminal activity at the house other than that Rocha-Ayon had parked in the house's driveway.

The Saxon Affidavit also describes a 2016 anonymous tip reporting drug activity at the Saxon house.[56] But without supporting corroborating information, the tip gives nothing. And the vague and unsubstantiated 2016 tip is stale. "A warrant must be supported by 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'"[57]

And officers observed drug dealer Camilo Rocha-Ayon drive his white Infiniti—the car allegedly he uses for drug trafficking activities—to Tucker's Saxon house in February 2017.[58]

---

[54] *Id.*
[55] *Id.* at 10.
[56] *Id.*
[57] *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) (*quoting Sgro v. United States,* 187 U.S. 206, 210 (1932)).
[58] Doc. 13-1 at 8-9.

10

But "the search warrant affidavit contained no evidence that [Tucker] distributed narcotics from the Saxon Avenue location, that he used the Saxon Avenue location to store narcotics, or that any suspicious activity had taken place there."[59] The affidavit's evidence "did not establish a fair probability that evidence of drug trafficking would be found at [Tucker's] residence. A more direct connection was required."[60]

For example, too much time passed between Rocha-Ayon's suspected January 15, 2017, drug trafficking at the Columbus area truck stop and his visit to Defendant Tucker's Saxon house for the affidavit to establish a link between the Saxon house and any drug activity that took place on January 15, 2017. Electronic surveillance showed Rocha-Ayon delivering a duffel bag to an unidentified man—a narcotics transaction, the affidavit alleged—near Columbus on January 15, 2017.[61] More than a month passed before Rocha-Ayon drove to Tucker's Saxon house in February.

Likewise, several days passed between Rocha-Ayon's visit to Tucker's Saxon house and officers' later February 19, 2017, seizure of Rocha-Ayon's duffel bag of cocaine.[62] These significant gaps in time undercut the Government's argument that Rocha-Ayon's drug activity was linked to Tucker's house.

The fact that Rocha-Ayon drove to Tucker's Saxon house after purchasing a vacuum sealer and plastic bags also fails to establish probable cause. The affidavit only states that Rocha-Ayon drove to the Saxon house and stayed there for an hour or so.[63] There is no mention of Rocha-Ayon carrying anything—the vacuum sealer, drugs, a duffel bag, money—into or out of

---

[59] *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016).
[60] *Id.* at 383.
[61] Doc. 13-1 at 8.
[62] *Id.* at 8-9.
[63] *Id.* at 8.

Tucker's house. The mere presence of a drug dealer like Rocha-Ayon at Tucker's house does not establish probable cause that the Saxon Avenue house had evidence of illicit activity.

The affidavit places significant weight on the fact that Rocha-Ayon drove his Infiniti to Defendant Tucker's Saxon house. Officers arrested Rocha-Ayon on February 19, 2017 with large amounts of cocaine. He was driving the white Infiniti when arrested. The Saxon Affidavit gives the opinion that Rocha-Ayon used the Infiniti for drug activity, but used a Chrysler for day-to-day driving.[64] The Saxon Affidavit then gave the opinion that "narcotic traffickers are known to use a different vehicle for traveling with contraband than they use for everyday transportation."[65] The Government argues that Rocha-Ayon's use of the Infiniti to visit the Saxon Avenue property gave probable cause to search that property.[66]

The Infiniti distinction is far too tenuous to justify searching Tucker's Saxon house. The affidavit documents just a few instances where Rocha-Ayon drove the Infiniti for drug-related purposes.[67] These few instances do not establish that Rocha-Ayon used the Infiniti exclusively for drug-related purposes. More important, although the Infiniti drove to the Saxon Avenue property, the Affidavit says nothing about Rocha-Ayon ever entering the Saxon Avenue property. The search warrant authorized searching the house, not the Infiniti automobile.

In fact, the affidavit itself seems to contradict that presumption: the affidavit notes that Rocha-Ayon's Infiniti "made a stop at the outlet malls on I-71" after visiting Tucker's Saxon house.[68] Because the affidavit fails to demonstrate that Rocha-Ayon only used his Infiniti for drug-related purposes and fails to demonstrate that the Infiniti had anything to do with the Saxon

---

[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Id.* at 8-9. On January 15, 2017, Rocha-Ayon used the Infiniti to give an identified man a duffel bag at a truck stop. On February 17, 2017, Rocha-Ayon used the Infiniti to purchase a vacuum sealer. On February 19, 2017, Rocha-Ayon used the Infiniti to transport eleven kilograms of cocaine.
[68] *Id.* at 8.

Case No. 5:17-CR-105
Gwin, J.

Avenue house interior, the Infiniti's presence at the Saxon house is an insufficient link to illegal activity.

The Saxon Affidavit's nexus between Defendant Tucker's Saxon house and illegal drug activity is too attenuated and fails to establish probable cause.[69]

Moreover, the Saxon search warrant fails to describe the items to be seized with sufficient particularity. "[T]he history of the Fourth Amendment [demonstrates that it] was enacted in part to curb the abuses of general warrants, devices which provided British officers with broad discretion to search the homes of citizens of the Colonies for evidence of vaguely specified crimes."[70] Accordingly, it is "well-settled" that a search warrant or the supporting affidavit must describe the items sought "with particularity."[71]

Courts analyze a search warrant's particularity on a case-by-case basis. "The proper metric of sufficient specificity is whether it was reasonable to provide a more specific description of the items at that juncture of the investigation."[72] The warrant must supply enough information to "guide and control the agent's judgment in selecting what to take."[73]

The Saxon search warrant fails to meet the Fourth Amendment's particularity requirement. The Saxon search warrant seeks the following:

> Books, records, receipts, notes, ledgers and other papers and electronic equipment to store information relating to the possession, transportation, ordering, purchase and distribution of controlled substances, in particular, cocaine, bank statements and records and other items evidencing the obtaining, secreting, transfer and/or concealment and/or expenditure of money; financial proceeds . . . photographs, indicia of occupancy; and other fruits, instrumentalities and evidence related to drug trafficking.[74]

---

[69] See *Brown*, 828 F.3d at 383.
[70] *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir.2010).
[71] *United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003).
[72] *United States v. Richardson*, 659 F.3d 527, 541 (6th Cir. 2011) (internal quotations omitted).
[73] *Id*. at 537.
[74] Doc. 13-1 at 1.

13

This description sanctions a wide-ranging exploration of Defendant Tucker's Saxon house. The search warrant seeks any drug-related physical and electronic evidence, and the accompanying affidavit fails to add any particularity. Officers could not "readily ascertain which items were subject to seizure."[75] Because the search warrant lacked a specific target, anything that seemed like "evidence of vaguely specified [drug] crimes" was up for grabs. Armed with an affidavit relying on mere suspicion, officers had free rein to conduct an overly broad search and seize any items they wanted.

The Saxon search warrant does not describe the items sought with sufficient particularity.

*2. Penguin Affidavit*

A common-sense reading of the Penguin Affidavit also shows that no probable cause is established to show a nexus between Defendant Tucker's Penguin Avenue house and any drug activity.

The Penguin Affidavit includes the non-specific information included in the Saxon Affidavit. It also describes items seized during the Saxon search.[76]

In an effort to link the Penguin Avenue address to Defendant Tucker or to Rocha-Ayon, the Penguin Affidavit says, "Investigators also recovered Summit County Fiscal Office records identifying TUCKER as the owner of 2123 Penguin Avenue."[77] The Penguin affidavit then says that Tucker received the electric bills for the Saxon Avenue location and that those First Energy bills were forwarded to the Penguin Avenue location.[78] Finally, the Penguin Affidavit says that an April 2016, domestic dispute complaint listed Tucker as having been involved at the Penguin Avenue location.[79]

---

[75] *United States v. Anderson*, 555 F. App'x 589, 595 (6th Cir. 2014).
[76] Doc. 13-2 at 13-15.
[77] *Id.* at 15.
[78] *Id.*
[79] *Id.*

The Penguin Affidavit gave no evidence of Penguin Avenue drug activity, no evidence that Tucker actually lived at the Penguin Avenue location, and no evidence that any records of any kind were likely to be at the Penguin Avenue location.

When considering the Penguin Affidavit's validity, the Court does not consider the items seized during the Saxon search. Because officers conducted the Saxon house search without probable cause, the items seized during the Saxon search are "fruits of the poisonous tree."[80] Moreover, as discussed below, the seized items are not subject to the *Leon* good-faith exception.[81] Accordingly, evidence from the Saxon search cannot provide the underlying basis for the Penguin house's search warrant.

But more important, the Saxon Affidavit gave no direct evidence that Tucker lived at Saxon Avenue or had kept records at Saxon Avenue.

The connection to the Penguin Avenue house was even weaker. Apart from the Penguin Avenue property being owned by Tucker and apart from Tucker receiving at least one bill at the Penguin Avenue location, nothing showed any connection to drug dealing or to records of drug dealing.

Without the Saxon search evidence, the Penguin Affidavit merely links Defendant Tucker to the Penguin house and reiterates the Saxon Affidavit. There is nothing to establish a nexus between the Penguin house and drug activity—no police surveillance of the house, no evidence of drug sales or storage.

The Penguin Affidavit fails to establish a connection between Defendant Tucker's Penguin Avenue house and drug activity. Accordingly, probable cause was lacking.

---

[80] *See Wong Sun*, 371 U.S. at 487-88; *see also United States v. Butts*, 729 F.2d 1514, 1518 (5th Cir. 1984) ("If officers illegally obtain evidence of criminal conduct and then use that information in an affidavit that causes a warrant to issue for a search or seizure, the ostensibly legal, warranted invasion of privacy falls under the exclusionary rule.").
[81] *See* Section III.B.

15

Moreover, the Penguin search warrant's description of the items sought is identical to the Saxon search warrant's description. As discussed above, this description fails to satisfy the Fourth Amendment's particularity requirement.

**B. The *Leon* good-faith exception is inapplicable here.**

The government argues that evidence from the Saxon and Penguin searches is not subject to the exclusionary rule because officers acted in good faith by executing search warrants approved by neutral state court judges.

Under *Leon*, "where officers rely in an objectively reasonable fashion on a search warrant issued by a neutral magistrate that is subsequently found to be invalid, the Fourth Amendment exclusionary rule does not require suppression of the fruits of the search."[82]

However, the *Leon* good-faith exception is not "boundless."[83] The Sixth Circuit recognizes that *Leon*'s good-faith exception does not apply where "an affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable."[84]

The Court finds that the both affidavits were so bare bones that it was objectively unreasonable for officers to rely on them. The Saxon and Penguin Affidavits only contained "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge."[85]

For example, the statement in both affidavits that Rocha-Ayon "traveled to 791 Saxon Avenue on February 17, 2017 to collect drug proceeds from TUCKER to pay for the upcoming delivery of cocaine"[86] lacks any factual basis. The only information included in the affidavits to support this conclusion is the fact that Rocha-Ayon drove his car to Tucker's Saxon house. The

---

[82] *United States v. Bowling*, 900 F.2d 926, 931 (6th Cir. 1990).
[83] *United States v. Wilhere*, 89 F. Supp. 3d 915, 919 (E.D. Ky. 2015).
[84] *United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006).
[85] *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996).
[86] Doc. 13-1 at 9; Doc. 13-2 at 15.

Case No. 5:17-CR-105
Gwin, J.

affidavits do not mention recorded conversations; any observed drugs, packaging, or money; or previous drug sales or storage at the residence.

Instead, both affidavits rely on an assumption: because Rocha-Ayon, a drug dealer, visited Tucker's house once, drug activity must have taken place there. But "[t]he good-faith inquiry requires examination of the affidavit for particularized facts that indicate veracity, reliability, and basis of knowledge and go beyond bare conclusions and suppositions."[87] The minimal nexus required to support an officer's good faith belief was not present in this case.

Accordingly, the Court declines to apply the *Leon* good-faith exception. The Saxon and Penguin searches violated the Fourth Amendment, and the Court excludes all evidence obtained during them.

### IV. Conclusion

For the reasons above, the Court **GRANTS** Defendant Tucker's motion to suppress all evidence seized as a result of the Saxon and Penguin search warrants.

IT IS SO ORDERED.

Dated: May 11, 2017                    *s/    James S. Gwin*
                                       JAMES S. GWIN
                                       UNITED STATES DISTRICT JUDGE

---

[87] *McPhearson*, 469 F.3d at 526.